UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------- x
ASSOCIATED PRESS,                      :
                                       :
          Plaintiff,                   :      05 Civ. 3941 (JSR)
                                       :
     -v-                               :      MEMORANDUM ORDER
                                       :
UNITED STATES DEPARTMENT OF DEFENSE,   :
                                       :
          Defendant.                   :
-------------------------------------- x

JED S. RAKOFF, U.S.D.J.

For several years now, the United States has held five hundred or more persons at Guantanamo Bay, Cuba, without specifically identifying who they are.  Although collectively labeled "enemy combatants," many of these detainees "may never have been close to an actual battlefield and may never have raised conventional arms against the United States or its allies...."  In re Guantanamo Detainee Cases, 355 F.Supp.2d 443, 447 (D.D.C. 2005).  From the beginning of 2002 until at least June 2004, "the substantial majority of detainees not charged with war crimes were not informed of the bases upon which they were detained, were not permitted access to counsel, ... and were alleged to be held virtually incommunicado from the outside world."  Id.

In mid-2004, however, as a result of the Supreme Court's decisions in Rasul v. Bush, 542 U.S. 466 (2004) and Hamdi v. Rumsfeld, 542 U.S. 507 (2004), the Department of Defense created Combatant Status Review Tribunals (the "Tribunals") to determine whether a given detainee is, in fact, an enemy combatant.  Between July 2004 and January 2005, the Tribunals held evidentiary

proceedings, as a result of which 520 detainees were classified as enemy combatants, while 38 were exonerated.  Many of those classified as enemy combatants are now challenging those designations in the courts pursuant to habeas corpus proceedings.

In November 2004, the Associated Press submitted a request under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, seeking the transcripts of the Tribunals' proceedings and related documentation.  When more than five months passed without any transcripts being released, the Associated Press brought this lawsuit, on April 19, 2005, seeking to compel such release.  In response, the Department of Defense produced the requested transcripts and other documentation, but with various redactions, most of which related, directly or indirectly, to the detainees' identities.

Contending that these redactions were proper under FOIA and that it has therefore provided the Associated Press with all that FOIA requires, the Department of Defense now moves for summary judgment in its favor.

It is critical to note that the Department of Defense does <u>not</u> claim that any of the redactions were required by national security.  The claim, rather, is that the redactions fall under FOIA's Exemption 6, which permits the withholding of "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6).  In seeking to show that disclosure of the

identifying information would be "clearly unwarranted" in terms of Exemption 6, the Department of Defense hypothesizes that if "terrorist groups or other individuals abroad are displeased by something the detainee said to the Tribunal, [the Department of Defense] believes that this could put his family at serious risk of reprisals – including death or serious harm – at home. This risk also translates to the detainee himself when he is released from detention." Declaration of Karen L. Hecker, Associate Deputy Counsel of the Department of Defense, dated June 30, 2004, at ¶ 9. The Government, in other words, seeks to act as a surrogate for the detainees and safeguard their identities for what it believes is their own good and the good of their families.

One might well wonder whether the detainees share the view that keeping their identities secret is in their own best interests. But -- given that the detainees are in custody and therefore readily available -- it is really not difficult to find out. Such information is, moreover, critical to an informed evaluation of the instant motion, which requires the Court to balance the perceived harm to the detainees' privacy interests against the public's right to know. See Dep't of the Air Force v. Rose, 425 U.S. 352, 372-73 (1976).

Therefore, in order that the Court may be in an informed position to decide the pending motion, the Court directs the Department of Justice to ask the detainees in question whether they wish the redacted information relating to their identities to be released to the Associated Press or not. See Rule 56(f), Fed. R.

3

Civ. P.; see also, Rules 43(e) and 83(b), Fed. R. Civ. P.
Specifically, the Court directs the Department of Defense to submit to the Court, by no later than September 2, 2005, a proposed written form of no more than one page that explains the situation (in language sufficiently simple that, even after being translated into each detainee's native tongue, it can be easily understood) and asks each detainee to check "yes" or "no" as to whether he wishes the relevant identifying information to be disclosed to the Associated Press.[1] The Associated Press will then have until September 8, 2005, to suggest any alternative wordings, after which the Court, by no later than September 12, 2005, will approve a final form that, in turn, can be given to each of the detainees. Based on the responses (a summary of which should be submitted by the Government to the Court, in affidavit form, by no later than October 7, 2005), the

---

[1] The Court is entirely unpersuaded by the Government's conjecture that there may be material logistical impediments to this approach. Although some of the detainees in question may be in the process of being moved from Guantanamo, they remain in the custody of the Department of Defense. Presenting them in writing with a single, straightforward question that can be answered by checking "yes" or "no" has to be one of the simpler tasks the Department of Defense has had to undertake with respect to these detainees. While the Government also expresses concern that utilizing such a procedure in ordinary Exemption 6 cases would be costly and difficult, that is precisely because such cases, unlike here, do not provide ready access to a captive audience. Where, as here, unusual circumstances permit ready determination of the views of the very persons whose privacy is sought to be protected, courts have utilized procedures not unlike the one here directed. See Center for National Security Studies v. U.S. Department of Justice, 215 F.Supp. 2d 94 (D.D.C. 2002), aff'd in part, rev'd in part on other grounds, 331 F.3d 918 (D.C. Cir. 2003); War Babes v. Wilson, 770 F.Supp. 1 (D.D.C. 1990).

4

Court will then be in a position to further address the pending motion.

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated: New York, New York
August 29, 2005