```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
ASSOCIATED PRESS,                    :
                                     :
          Plaintiff,                 :      05 Civ. 3941 (JSR)
                                     :
          -v-                        :      OPINION AND ORDER
                                     :
UNITED STATES DEPARTMENT OF DEFENSE, :
                                     :
          Defendant.                 :
------------------------------------ x
```

JED S. RAKOFF, U.S.D.J.

Exemption 6 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(6), exempts from disclosure to someone requesting information from the Government those "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." Id. By Opinion and Order filed January 4, 2006 (full familiarity with which is here presumed), the Court rejected the contention of defendant Department of Defense (the "Department") that Exemption 6 categorically prohibits disclosure to plaintiff, the Associated Press, of those portions of the transcripts (and related documents) of the Guantanamo tribunal proceedings in which the detainees revealed their names, nationalities, home locales, and other "identifying information." Associated Press v. U.S. Dep't of Defense, 05 Civ. 3941 (JSR), __ F. Supp. 2d __, 2006 WL 13042 (S.D.N.Y. Jan. 4, 2006). Against the Department's argument that such disclosure would constitute a clearly unwarranted invasion of the detainees' personal privacy because of the risk that it would subject the detainees, and their families, friends and associates, to possible embarrassment and retaliation,

the Court concluded that the detainees never had a reasonable expectation that the information they provided to the Guantanamo tribunal would remain private and that, even assuming arguendo that they had such an expectation, the Department had not offered any competent evidence of the alleged risks that would warrant the categorical exclusion of the identifying information. Id. Without these threshold showings, the Court held, the detainees had no privacy rights in the identifying information that were cognizable under Exemption 6, and therefore the Court need not balance such rights against the Associated Press's interest in disclosure. Id. The Court held open to the Department, however, the opportunity to make a particularized showing that one or more specific detainees had retained a reasonable expectation of privacy with respect to one or more specific items of their identifying information sufficient to cause the Court to undertake a balancing of interests as to those particular items. Id. at *3 n.3.

Promptly after the Court issued its January 4 ruling, the Department moved for reconsideration on the ground that the Court had overlooked the alleged privacy interests of, and risks to, the detainees' families, friends, and associates. At oral argument on that motion, the Department indicated that, if its motion for reconsideration were denied, it would not seek to avail itself of the opportunity to make a more particularized showing but would, instead, rest on the present record. See transcript, 1/13/06, at 19-20. The parties then agreed that, in these circumstances, if the Court denied

2

the Department's motion for reconsideration, the Associated Press would be entitled, without further proceedings, to a final judgment directing the Department to provide the identifying information. Id.

Against this background, the Court now turns to the Department's motion for reconsideration. The motion must be denied both as a matter of procedure and as a matter of substance.

The procedural reason the motion must be denied is that the argument it advances was never meaningfully raised in the briefing and argument of the underlying summary judgment motion to which it relates and so may not be raised now under the guise of a motion for reconsideration. See, e.g., Horvath v. Deutsche Lufthansa, AG, 02 Civ. 3269 (PKC), 2004 WL 241671, at *2 (S.D.N.Y. Feb. 9, 2004); Pretter v. Metro N. Commuter R.R., 00 Civ. 4366 (JSR), 2002 WL 31163876, at *1 (S.D.N.Y. Sept. 30, 2002); Range Rd. Music, Inc. v. Music Sales Corp., 90 F. Supp. 2d 390, 392 (S.D.N.Y. 2000). A motion for reconsideration allows a party to bring to the Court's attention an argument the party has previously raised and the Court has overlooked; but it does not allow a party to use the guise of "reconsideration" to raise what is effectively a new argument or one never meaningfully developed previously. Id. Otherwise, disappointed litigants would be forever raising new arguments and there would be no end to litigation. Id.

Here, the sole argument made by the Department in its motion for reconsideration is that the Court erred in stating in its underlying opinion that "[t]he only privacy interest [the Department] purports to assert under Exemption 6 is that of the detainees,"

3

Associated Press, 2006 WL 13042, at *2, whereas, according to the Department, it was also asserting the alleged privacy interests of the detainees' families, friends and associates.  See Defendant's Memorandum Of Law In Support Of Its Motion For Reconsideration ("Def. Recon. Mem.") at 3.  The Department does not contest that the Court did consider in its January 4 opinion the Department's argument that the detainees' own privacy rights were implicated not only by the detainees' supposed fears of personal embarrassment and retaliation but also by the detainees' supposed fears that their families, friends, and associates would also be subject to embarrassment and retaliation once the detainees' identities were known.  See Associated Press, 2006 WL 13042, at *3 n.2.  But the Department claims the Court overlooked its further argument that these third parties have themselves an important privacy interest in having the detainees' identifying information kept confidential.

In actuality, however, this latter argument was never cognizably raised prior to the motion for reconsideration.  In claiming that it raised this argument previously, the Department offers just four citations to the underlying record.  See Def. Recon. Mem. at 3-4.  The only one of the four that is from the Department's memoranda of law – the place where legal arguments must be raised – is to a one-sentence footnote at page 20 of the Defendant's Memorandum of Law In Support Of Its Motion For Summary Judgment, which reads in its entirety: "Names of persons mentioned by detainees in their testimony and statements are protected by Exemption 6 for the additional reason that disclosure of that information is

identifying as to the mentioned individuals." Even indulging the doubtful proposition that this sentence is intended to assert the privacy rights of the third parties – in which case one wonders why it is reduced to a single sentence in a footnote deep within the Department's 25-page moving memorandum and never mentioned at all in the Department's reply memorandum – an argument made only in a footnote is not preserved for purposes of reconsideration. Cf. United States v. Restrepo, 986 F.2d 1462, 1463 (2d Cir. 1993) ("We do not consider an argument mentioned only in a footnote to be adequately raised or preserved for appellate review."). To put it colloquially, a motion for reconsideration is not a game of "gotcha."

As for the other three citations offered by the Department in support of its claim of having previously raised the argument it now contends the Court overlooked — viz., the Declaration of Karen L. Hecker, dated June 30, 2005, at ¶¶ 6, 10 (submitted as part of the Department's evidentiary submissions on summary judgment), and the Department's letters to the Court dated September 2, 2005 and November 9, 2005 (submitted in regard to the Court's polling of the detainees) — all three simply refer to the privacy interest of the detainees in withholding the names and identities of the third parties, an interest, that, as noted, the Court did consider in its January 4 ruling.

The motion for reconsideration must therefore be denied, if for no other reason, because the argument now asserted — that the detainees' family, friends, and associates have a privacy right that can be invoked on their behalf by the Government to prohibit FOIA

5

disclosure of the identifying information provided by the detainees —
was never properly raised in the underlying motion practice.

Even assuming arguendo that this were not the case, however,
the motion must still be denied, because the argument lacks
substantive merit. If, as the Court held in its January 4 decision,
the detainees had no reasonable expectation that the information they
disclosed during the tribunal proceedings would be kept confidential,
the third parties had even less of an expectation that the
information disclosed by the detainees during the tribunal
proceedings would be kept confidential. Cf. United States v.
Jacobsen, 466 U.S. 109, 117 (1984) ("It is well settled that when an
individual reveals private information to another, he assumes the
risk that his confidant will reveal that information to the
authorities.")

Perhaps, however, a further elaboration is in order as to why
the Court regards a reasonable expectation of privacy as a
prerequisite to the invocation of Exemption 6, at least in these
circumstances. Although Exemption 6 offers certain protections
against "a clearly unwarranted invasion of personal privacy," it
nowhere defines any of these terms. This is an unfortunate omission,
not least because defining "privacy" in a manner broadly and
consistently applicable to the differing legal contexts in which the
concept arises has proven difficult and elusive. See, e.g., Barry v.
City of New York, 712 F.2d 1554, 1558 (2d Cir. 1983) ("The exact
nature and scope of the interest in privacy has never been fully
defined."); cf. Statharos v. New York City Taxi and Limousine Comm'n,

1983 F.3d 317, 322 ("the right to privacy is one of the less easily delineated constitutional guarantees"). Even the much-quoted definition of privacy adopted by Warren and Brandeis in their ground-breaking article, The Right To Privacy, 4 Harv. L. Rev. 93 (1890) — that is, the "right to be let alone" — has proved too nebulous to be of much use in many practical situations. In the words of one legal commentator, "the concept of privacy has been so poorly articulated that it is not clear what is protected and what is not." J.W. DeCew, In Pursuit of Privacy: Law, Ethics, and the Rise of Technology 27 (1997).

Despite this imprecision, courts are regularly called upon to address the concept of privacy — whether constitutional, statutory, or common law — in a wide variety of contexts. However, the area where federal courts are most frequently called upon to evaluate what is meant by "privacy" is in connection with the Fourth Amendment's protections against unreasonable searches and seizures. There, without attempting to precisely define what is meant by "privacy," the federal courts, for the past half century and more, have limited the Fourth Amendment's reach to circumstances where there is a "reasonable expectation of privacy." See, e.g., California v. Ciraolo, 476 U.S. 207 (1986); Katz v. United States, 389 U.S. 347 (1967). As summarized by Justice Harlan in his concurring opinion in Katz (cited with approval in Ciraolo):

> [T]he rule that has emerged from prior decisions is that there is a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as 'reasonable.' Thus a man's home is, for most purposes, a place where he expects privacy, but objects,

7

> activities, or statements that he exposes to the 'plain view' of outsiders are not 'protected' because no intention to keep them to himself has been exhibited.

Id. at 361.

It may be that, as a result of this approach, privacy is in effect defined, obliquely but usefully, as a zone (whether spatial, informational, or whatever) into which a reasonable person neither wishes nor expects outsiders to intrude. Cf. Whalen v. Roe, 429 U.S. 589, 599 (1977) ("the individual interest in avoiding disclosure of personal matters"). What is certain, however, is that, at least in the Fourth Amendment context, the zone of protectable privacy does not extend beyond situations in which a reasonable person would have an expectation of privacy. See, e.g., California v. Greenwood, 486 U.S. 35, 41 (1988); Smith v. Maryland, 442 U.S. 735, 745 (1979).

Although Fourth Amendment jurisprudence does not translate automatically to other contexts, the Supreme Court has found it useful to employ the expectation of privacy concept in certain civil cases involving informational privacy. For example, in Nixon v. Administrator of General Services, 433 U.S. 425 (1977), involving disclosure under the Presidential Recordings and Materials Preservations Act, the Court acknowledged former President Nixon's privacy right in certain materials arising from his "legitimate expectation of privacy in such materials. Katz v. United States, 389 U.S. 347 (1967)." Id. at 458. How, indeed, can one meaningfully speak in the informational context of a right to "personal privacy" (as in Exemption 6) where the person or class of persons involved has no expectation of privacy?

8

Turning, then, to Exemption 6, the exemption, on its face, creates a presumption in favor of disclosure. Information that must otherwise be produced under FOIA may be withheld under Exemption 6 only if the Government shows (i) that the information is contained in personnel, medical or "similar files," (ii) that disclosure of the information would constitute an "invasion of personal privacy," and (iii) that such invasion is "clearly unwarranted." See 5 U.S.C. § 552(b)(6).

As to the first requirement, the Associated Press argues that the transcripts and other records of quasi-judicial proceedings before a military tribunal bear little resemblance to medical or personnel files. The Department, for its part, makes no claim that the files of the tribunal proceedings are exempt as a whole from disclosure, and it has already turned over the bulk of the requested files, redacting only the identifying information. The Department argues, however, that under the holdings of such cases as U.S. Dep't of State v. Washington Post Co., 456 U.S. 595 (1982), "similar files" is given such a broad definition that it encompasses that portion of any Government file that includes information in which a person's privacy is implicated. Thus, "[w]hen disclosure of information which applies to a particular individual is sought from Government records, courts must determine whether release of the information would constitute a clearly unwarranted invasion of that person's privacy," regardless of what file they are found in. Id. at 602.

Notwithstanding the broad language of Washington Post, this Court might hesitate to adopt a view of the first requirement of

9

Exemption 6 that in effect renders that requirement a nullity. But the Court, as indicated in the January 4 opinion, see <u>Associated Press</u>, 2006 WL 13042, at *3 n.4, need not reach the issue of whether or not the identifying information that the detainees provided in the tribunal proceedings itself constitutes a "file" that is "similar" in relevant respects to personnel and medical files, because, as the January 4 opinion indicates, the Government has failed to meet the second requirement for invoking Exemption 6, to wit, that disclosure of the information would constitute an invasion of personal privacy.

Specifically, the Court held in its January 4 opinion that the Government had failed to adduce any competent evidence that the detainees, when they provided the identifying information in issue, had any reasonable expectation that the information would be kept confidential. <u>Id.</u> at *2.[1] Most of the information was given in sworn testimony at quasi-judicial hearings that were visibly being recorded by the equivalent of a court reporter (called a "recorder person" in the transcripts). While the proceedings were closed to the general public, the press was present.[2] Although the detainees

---

[1] The Court was here dealing with the detainees as a class, consistent with the Department's view that the redactions should be categorical. As noted, however, the Department subsequently declined the Court's invitation to try to make this showing with respect to particular detainees and particular items of information. See transcript, 1/13/06, at 19-20.

[2] Although the media representatives had to agree in advance to various confidentiality requirements, the Government does not suggest that the testifying detainees knew this. Nor does the Government remotely suggest that the partial press secrecy was imposed because of concerns for the detainees' privacy. Indeed, it is hard to escape the inference that the Government's entire Exemption 6 argument before this Court is a cover for other concerns, such as the Government's desire, only recently modified

10

did not have formal legal representation, each was provided a "personal representative" who functioned as an advisor. Before each detainee testified, the "Tribunal President" explained to the detainee the process, without suggesting in any way (so far as the record before this Court indicates) that any promise of confidentiality was being made with respect to the detainee's testimony. Nor does it appear that any detainee requested that his testimony be held in confidence.[3] Each detainee was, however, given the option not to testify and to forego the process altogether; indeed, at no point has the Department suggested that the detainees were under any compulsion to testify, let alone to reveal such "identifying information" as their religion, backgrounds, or associates. And the only files here in issue are of those who chose to go forward and reveal such information. The notion, therefore, that the detainees, in voluntarily providing sworn recorded testimony to a quasi-judicial tribunal,[4] nonetheless retained a reasonable

---

by the courts, to keep the detainees incommunicado with the outside world. See Rumsfeld v. Padilla, 542 U.S. 426 (2004). It is noteworthy that, since the Supreme Court decided Padilla, no fewer than 98 of the detainees, according to the Associated Press, have filed habeas proceedings in which they have voluntarily revealed the identifying information relating to themselves that the Department redacted from their transcripts under the guise of safeguarding their privacy. See transcript, 1/13/06, at 21.

[3] By contrast, in U.S. Dep't of State v. Ray, 502 U.S. 164 (1991), the case on which the Department primarily relies, a promise of confidentiality was expressly given before the information there in issue was provided.

[4] Cf. Lugosch v. Pyramid Co. of Onondaga, No. 05-3620-cv, __ F.3d __, 2006 WL 45865 (2d Cir. Jan. 10, 2006) (describing common law right of access to judicial documents).

expectation that their identifying information would remain confidential, is entirely without evidentiary support on this record, and the Court in its January 4 opinion so held. Id. at * 3.

On the instant motion for reconsideration, the argument now advanced (really for the first time, as indicated above) is, in effect, that even if the detainees themselves did not have a protectable privacy interest in the identifying information they voluntarily provided to the tribunals, their family, friends, and associates who were directly or indirectly implicated in such testimony did have such an interest. But any reasonable expectation of these third parties that the identifying information provided by the detainees would remain private is even more conjectural than that of the detainees themselves. It is theoretically possible, of course, that the family of a detainee may not want his, or their, names and whereabouts revealed because of fears of embarrassment or retaliation; but how can this be said to be a privacy interest, when they never had any reasonable expectation that the detainee and/or his captors would not reveal his and their names? See, e.g., Smith v. Maryland, 442 U.S. 735, 745 (1979)("This Court consistently has held that a person has no legitimate expectation of privacy in information he voluntarily turns over to third parties.").[5]

---

[5] The Government's reliance on Wood v. FBI, 432 F.3d 78 (2d Cir. 2005), is misplaced because the third parties in issue there — FBI and DOJ employees involved in the investigation of FBI agents who allegedly lied in affidavits supporting arrest warrants — had a well-recognized expectation of privacy as government employees participating in an investigation. Moreover, the Wood court recognized that "[t]his Court and others have recognized that government investigative personnel may be subject to harassment or embarrassment if their identities are

Additionally, the Government has not introduced the slightest evidence that such embarrassment or retaliation is likely, confining itself, as noted in the January 4 opinion, to wholly conclusory and grossly speculative assertions. Associated Press, 2006 WL 13042, at *3. This is not sufficient to carry the Government's burden. See Perlman v. United States DOJ, 312 F.3d 100, 105 (2d Cir. 2002); Halpern v. FBI, 181 F.3d 279, 293 (2d Cir. 1999). Although the Government's broad assertions, even though wholly unsupported by any competent evidence, might be entitled to some deference if they dealt with issues of national security, their claims as to what embarrassment or fear of retaliation might be felt by the families and friends of the detainees, and what those third parties' reasonable expectations of privacy might be, is not entitled to special deference but, rather, must be supported by at least a modicum of competent evidence.

Because the Government has not remotely met its burden of showing that either the detainees or their families, friends, or associates have a protectable privacy interest in the redacted information, the Government has not satisfied the second requirement for invocation of Exemption 6. It is therefore unnecessary on this motion for reconsideration, as it was similarly unnecessary on the underlying summary judgment motion, for the Court to reach the third requirement and balance such privacy concerns as the detainees and

---

disclosed." Id. at 88. As discussed infra, there is no basis here for the Court to conclude that these third parties will be subject to "harassment or embarrassment if their identities are disclosed."

13

the third parties are alleged to have against the public benefits of disclosure alleged by the Associated Press.[6]

For the foregoing reasons, the Government's motion for reconsideration is hereby denied. The Clerk is directed to enter final judgment in favor of the Associated Press, and the Department is directed to provide the Associated Press with unredacted copies of the applicable transcripts and documents by no later than January 30, 2006. If the Department wishes to seek a stay of this order pending appeal, it should, together with counsel for the Associated Press, jointly call Chambers by no later than 5 p.m. on January 25, 2006 to discuss such an application.

SO ORDERED.

JED S. RAKOFF, U.S.D.J.

---

[6] It seems only fair to note, however, that the argument of the Associate Press on this point appears to be a strong one. For example, the Court's review of the underlying transcripts indicates that several of the detainees, in denying that they were enemy combatants, specifically testified that there were people in their home villages who could attest to their innocence; but since the names of the villages and the friends were redacted, how could the Associated Press evaluate whether the tribunal was taking reasonable steps to follow-up on these assertions? Similarly, because the religions of the detainees were redacted, how could the Associated Press determine whether the tribunals were treating Muslim and non-Muslim detainees alike? In these and a dozen other respects, the redacted information will likely prove useful to the Associated Press in determining how the tribunals were really operating – a consideration that goes to the heart of FOIA's purpose. See U.S. Dep't of Justice v. Reporters Comm. for Freedom of Press, 489 U.S. 749, 774 (1989) (purpose of FOIA is to "ensure that the Government's activities be opened to the sharp eye of public scrutiny.") But, again, it is not necessary for the Court to reach a conclusion on this issue, since the Government has failed to meet its burden in other ways.

Dated: New York, New York
January 23, 2006